

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAL SHROATS | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 08 C 5565 |
| | ) |
| v. | ) Magistrate Judge |
| | ) Arlander Keys |
| | ) |
| CUSTOMIZED TECHNOLOGY, INC., | ) |
| ET AL. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hal Shroats filed suit against Defendants Customized Technology, Inc. (Customized), Arthur R. Keller (Keller), and Linda J. Alderman (Alderman) alleging copyright infringement and breach of fiduciary duty. Before the Court is Defendants' Motion for Summary Judgment As to Count I of Plaintiff's Second Amended Complaint for Sanctions, and for Leave to File a Bill of Costs and a Petition for Attorney's Fees. Also pending is Defendants' Motion to Dismiss or Stay Count II of Plaintiff's Second Amended Complaint. For the reasons set forth below, Defendants' motion for summary judgment is granted as is their motion to dismiss or stay.

## I. Defendants' Motion for Summary Judgment As to Count I

### A. *Summary of Relevant Facts*

From September 1988 until June 1998, Mr. Keller was the Director of Special Services, including special education, at

Kirby School District 140 (Kirby) in Tinley Park, Illinois.
(Decl. of Arthur R. Keller in Supp. of Defs.' Mot. for Summ. J. ¶
2.) He was responsible for, *inter alia*, ensuring that the
district's special education teachers recorded certain
information about the performance and education of their
students. (*Id.*) To that end, a series of forms was created.
(*Id.* at ¶ 3.) Mr. Keller's initials and each form's creation
date was listed on each form. (*Id.*)

In July 1997, Mr. Keller met with Mr. Shroats who was, at
the time, Treasurer of the Orland School District in Orland Park,
Illinois. (Decl. of Hal Shroats in Supp. of Pl.'s Mot. against
Summ. J. ¶¶ 2, 3.) The two discussed Mr. Shroats' ability to
convert the forms from paper to an electronic format which would
allow for computerized data entry and storage of the data on a
computer database. (Decl. of Arthur R. Keller in Supp. of Defs.'
Mot. for Summ. J. ¶ 4.) Mr. Shroats was given copies of the
forms, and the software, named Individualized Education Plan
(IEP) software, was completed in February 1998. (*Id.*) Shortly
thereafter, the IEP program was imbedded on floppy disks by Mr.
Shroats. (Defs.' Local Rule 56.1 Statement of Undisputed
Material Facts in Supp. of Their Mot. for Summ. J., Sanctions &
Leave to File a Bill of Costs & a Pet. for Attorney's Fees ¶¶ 11,
19.) Multiple copies of the disks were made and subsequently
distributed to Kirby's special education teachers. (*Id.* at ¶

11.) They, in turn, used the disks to copy the IEP software onto their computers, which allowed them to access and run the program without further need for the floppy disks. (*Id.*) At some point after the disks were distributed, they were revised. (Shroats' Dep. I at 65, 70.)

Sometime after February 1998, disks were used to install the IEP software on Kirby's newly purchased server. (Defs.' Local Rule 56.1 Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J., Sanctions & Leave to File a Bill of Costs & a Pet. for Attorney's Fees ¶¶ 12, 13.) The server version of the software was the same as that contained on the floppy disks; Mr. Shroats simply copied the program and put in on the server. (Shroats' Dep. I 66-68.) After the installation, the teachers were able to access the software directly from the server. (Defs.' Local Rule 56.1 Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J., Sanctions & Leave to File a Bill of Costs & a Pet. for Attorney's Fees ¶ 12.) This meant that when changes were made, they would be reflected on all of the computers; this was ideal, as the program underwent frequent changes. (*Id.*) Years later, Kirby discontinued its use of CRT's services and began using those of a competing vendor. (Decl. of Arthur R. Keller in Supp. of Defs.' Mot. for Summ. J. ¶ 7.) Neither the disks used to install the IEP software on the computers, nor those used to load it on the server were ever

received by Mr. Shroats; in fact, he does not know where the disks are currently located. (Defs.' Local Rule 56.1 Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J., Sanctions & Leave to File a Bill of Costs & a Pet. for Attorney's Fees ¶ 13.)

In June 1998, Mr. Keller retired from his position at the school district. (Decl. of Arthur R. Keller in Supp. of Defs.' Mot. for Summ. J. ¶ 5.) Thereafter, he and Mr. Shroats formed CRT for the purpose of "furnish[ing] and maintain[ing] computerized database record keeping software to school districts for Special Education and other education needs." Both Mr. Shroats and Mr. Keller owned fifty percent of the corporation's shares. (*Id.*) In September 2000, Defendant Linda J. Alderman joined CRT as a software programmer. (Defs.' Local Rule 56.1 Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J., Sanctions & Leave to File a Bill of Costs & a Pet. for Attorney's Fees ¶ 14.) She was responsible for "creating IEP software for new clients of CRT, and . . . provid[ing] software maintenance services to all of CRT's IEP clients." (*Id.*) Serious disputes arose between Mr. Shroats and Mr. Keller and on December 31, 2007, CRT was dissolved. (*Id.* at ¶ 15.)

In December 2007, Mr. Shroats began seeking legal counsel regarding the possibility of filing an action against Mr. Keller for copyright infringement. (*Id.* at ¶ 17.) He was told that

prior to bringing suit, he would be required to file for and obtain a copyright registration. (*Id.*) And that a deposit containing the work to be protected was required to be submitted with his copyright application. (*Id.* at ¶ 18.) Because he did not have an original copy of the IEP program, Mr. Shroats contacted a member of Kirby's technical staff and arranged to copy IEP files from the district's server. (*Id.*) After obtaining the files, Mr. Shroats made several modifications to them. For example, he converted the files from FileMaker Pro Version 5 (.fp5) to a later version of the application, designated .fp7. (*Id.* at ¶ 20.) He did this because the earlier version was no longer supported by any computer operating system and as a result of needing to recreate the files as .pdf files for purposes of preparing the deposit. (*Id.* at ¶ 21.) Additionally, he "added several files that were not in the .fp5 files, such as 'Word' documents relating to passwords, zip files, a 'Scripts IEP99' file, and others." (*Id.* at ¶ 22.)

During the conversion, Mr. Shroats also modified an "About CRT" button which had been located in the files he had downloaded from Kirby's server. (*Id.* at ¶ 23.) Prior to Mr. Shroats' conversion, a user, after clicking on the button, was directed to a "CRT business card" display screen which indicated that CRT was the source of the software and also provided CRT's name, address, telephone numbers, email address, and information about the

company's technical support. (*Id.* at ¶ 23; Ex. J.) Following the alteration, however, "the activation of an 'About CRT' button would display a screen showing an 'OK' button at the center of the screen, with the CRT business card completely gone from three screens that were present in the .fp5 files [Mr. Shroats] obtained from School District 140." (*Id.* at ¶ 24.) On other layouts, Mr. Shroats removed the button completely. (*Id.*) Further, Mr. Shroats deleted the "Old Forms" heading from one of the software's navigational screens and also added "Archive" files. (*Id.* at ¶ 24.) At least some of the changes were made to make the screen shots appear as they had originally in 1998. (*Id.* at ¶ 24.)

On June 11, 2008, Mr. Shroats filed a copyright application for a work entitled, "Student District Individual Education Plan Program" with the United States Copyright Office. (*Id.* at Ex. B.) In his registration submission, he listed himself as the sole author of the "[e]ntire computer program, including text and visual material of screen displays," and claimed that the program was first published on February 1, 1998. (*Id.*) As part of his required deposit, Mr. Shroats included copies of some of the forms that he had received from Mr. Keller when the IEP software project was in its infancy stages. (Decl. of Arthur R. Keller in Supp. of Defs.' Mot. for Summ. J. ¶¶ 3, 8.) On July 18, 2008, a copyright examiner responded to the application as follows:

> We are delaying registration because the copy of the work
> we received appears to be a revised version of a
> previously published computer program. However, the
> application has been completed to refer to a previous
> version. For this reason, it is unclear which version of
> the computer program you wish to register. The material
> submitted for registration contains various dates as late
> as May 19, 2008.
>
> If you wish to register the revised version you
> submitted, the registration must include statements that
> exclude the material published in the prior version and
> that describe the new material in copyrightable terms.
> This information is required regardless of whether the
> earlier published version has been registered in the
> Copyright Office.
>
> In this case, please authorize us to correct the
> registration record. The statement "previous version"
> will be used to exclude the preexisting material and the
> new authorship will be described as "new and revised
> computer program text and material on screen displays."
>
> Also, the date of creation and date of publication should
> refer to the version submitted for registration. Please
> inform us of the appropriate year of creation and month,
> day, and year of publication in your reply.
>
> On the other hand, if you wish to register the earlier
> version as described in your application, please submit
> a copy of that version of the work.

(Defs.' Local Rule 56.1 Statement of Undisputed Material Facts in
Supp. of Their Mot. for Summ. J., Sanctions & Leave to File a
Bill of Costs & a Pet. for Attorney's Fees Ex. E.)

As a result of the letter, Mr. Shroats had conversations
with his attorney and determined that the problem was the May 19,
2008 date which appeared as a date stamp at the footer on pages
of the deposit. (*Id.* at ¶ 29.) FileMaker automatically applies,
as a footer, the date that the deposit is printed. (*Id.*) The

only way to change the date is to change the date settings on the user's computer to reflect the desired date and reprint the document. (*Id.*) Mr. Shroats subsequently adjusted the date on his computer to February 1, 1998, and reprinted the pages of the deposit that were of concern. (*Id.* at ¶ 30.) He also removed certain buttons on at least one screen. (*Id.* at ¶ 31.) On August 6, 2008, his attorney responded to the examiner,

> We wish to register the earlier version of the work as described in the application. The earlier version was published on February 1, 1998.
>
> The copy of the work submitted with the registration application corresponds with that earlier version with the exception of time/date stamps that reflect when the copy was printed. More specifically, the earlier version is installed and stored on a computer that has software to print the computer program text and screen displays. That software automatically inserts the time/date stamps shown as footers on each printed page of computer program text.
>
> Based on the foregoing, the applicant respectfully requests that these time/date stamps be considered as excluded from the material submitted for registration. Please also consider this response as an authorization to amend the registration record accordingly.

(*Id.* at Ex. E.) The copyright was assigned registration number TX 6-855-564 on August 6, 2008. (*Id.*)

Mr. Shroats filed suit on September 29, 2008; an Amended Complaint for Federal Copyright Infringement on January 22, 2009; and a Second Amended Complaint on February 17, 2010. As of his last filing, he maintained that before February 1, 1998, he had authored the IEP software. He claimed that, beginning in 2008

and up until the time of the filing, Defendants infringed upon the copyright by "copying, creating derivative works, selling and offering for sale computer programs incorporating or containing Plaintiff's IEP, or a substantially similar program; with [Defendant Linda] Alderman performing the copying, creating derivative works, and incorporating of the IEP."

On August 6, 2010, counsel for Mr. Shroats withdrew. At that time, the Court urged him to retain new counsel, and to do so by August 20, 2010. Defendants filed the pending motion for summary judgment on November 30, 2010.

B.    *Standard of Review*

Summary judgment is proper if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Though this standard places the initial burden on the moving party, once it has met this burden of production, the nonmoving party "may not rely merely on allegations or denials in its own pleading" but instead must "set

out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). When deciding whether summary judgment is proper, the Court must accept the nonmoving party's evidence as true and draw all inferences in favor of that party. *See Anderson*, 477 U.S. at 255.

    *C. Analysis*

    Defendants maintain that Mr. Shroats is precluded from bringing claims of copyright enforcement as he does not have a valid copyright registration. This is because, they argue, rather than submitting an original or bona fide copy of the work to be copyrighted with his application, Mr. Shroats modified the program and reconstructed it from memory.

    "To qualify for copyright protection, a work must be original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)(citing *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 547-549, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985)). Pursuant to the Copyright Act of 1976, 17 U.S.C. § 101 et seq, an individual wishing to register a copyright, in the case of a published work, must deposit "two complete copies . . . of the best edition" with the U.S. Copyright Office at the time of application. 17 U.S.C. § 408(b)(2). The importance of copyright registration cannot be overstated. Indeed, though "copyright protection dates from the time that an artist creates an original

work that may be copyrighted . . . a cause of action for infringement cannot be enforced until the artist actually registers the copyright pursuant to the requirements of the Copyright Act." *Coles v. Wonder*, 283 F.3d 798, 801 (6th Cir. 2002)(citing 17 U.S.C. § 411(a)). To state a claim for copyright infringement, Plaintiff must prove: 1) that he had ownership of a valid copyright and 2) that another individual copied a protected interest in the work. *Coles*, 283 F.3d at 801 (citing *Feist*, 499 U.S. at 361). Mr. Shroats maintains that he has a valid copyright registration as he deposited with the Copyright Office, "an identical copy of the work published on February 1, 1998." Because the evidence before the Court fails to support Mr. Shroats' contention, and actually tends to prove otherwise, the Court disagrees.

As an initial matter, the Court notes that Mr. Shroats testified that he was not in possession of the disks that were used to load the IEP software on the teachers' computers or even Kirby's server. Instead, he obtained the files which he later submitted as his deposit when he visited Kirby and downloaded a copy of the software from the server. However, he downloaded the software from the server ten years after the time that it was initially placed on the teachers' computers and the server. This is troubling in light of the fact that he, himself, testified that the software underwent frequent changes. The Court is not

11

sure, therefore, exactly which version of the software Mr.
Shroats downloaded and subsequently provided to the Copyright
Office. Because Kirby discontinued its use of the IEP software
in 2005, it is safe to assume that the files downloaded from the
server were a version released in a seven year as opposed to ten
year window. But that the version submitted as the deposit was
not the original finds a wealth of support in the record.

For example, as discussed earlier, the software downloaded
from the server in 2008 included at least three screen shots
recognizing CRT (a CRT business card and "About CRT" navigational
buttons). (*See* ECF No. 110-9, pp. 1-2.) But CRT did not come
into existence until July 1998, five months after the date that
the original software was published. Recognizing this and
wanting to make the deposit look like the 1998 version, Mr.
Shroats removed some of the references to CRT from the deposit.
Though he left others, he deleted the CRT business card and
replaced the screen with an "OK" button. (*See* ECF No. 110-42,
pp. 439-440.) While the "OK" screen shots were not part of the
original software, they were included in Mr. Shroats' deposit.
(*See* ECF No. 110-42, p. 434; ECF No. 110-43, p. 461; ECF No. 110-
49, p. 716.) Mr. Shroats also removed an "Old Forms" heading
from a screen shot, though it appeared in the software version
downloaded from the server. (*See* ECF No. 110-8, p. 1.)
Additionally, the program language in the files used for the

deposit has file references for certain files that were not included in the deposit, yet, these files were included in the directory listing of files in the software downloaded from the server by Mr. Shroats.

The deposit also contains forms which obviously could not have been included in the original software. These include:

"Network Special Services Software Instructions," dated March 1999 and June 1998
(ECF No. 110-39, pp. 369-375; ECF No. 110-40, pp. 376-377);

"Re-Evals by Location School Kirby School District 140," which states the following "Reevaluations Due - 2007-08 School Year - Sept. '07 through Aug. '08)
(ECF No. 110-42, p. 449);

"Department of Special Services Hearing Screening," dated March 2001
(ECF No. 110-45, p. 530-531);

"Request for Home/Hospital Services," dated January 2004
(ECF No. 110-46, pp. 577-578);

"Assessment of the Child's Learning Environment," dated October 1999
(ECF No. 110-47, pp. 627-629);

"Regular Education Initiative - Request for Assistance," dated September 2001
(ECF No. 110-47, pp. 636-637);

"IEP Assurance Checklist," dated November 2001
(ECF No. 110-47, pp. 647-648);

"Physical Therapy Evaluation," dated December 1999
(ECF No. 110-48, pp. 654-659);

"Plan and Documentation," dated September 2001
(ECF No. 110-48, pp. 660-661);

"Parent/Guardian Notification of Decision Regarding Referral," dated October 2000
(ECF No. 110-49, pp. 718-719);

"Parent/Guardian Consent for Evaluation," dated October 2000 (ECF No. 110-49, pp. 720-722);

"Parent/Guardian Notification of Conference," dated October 2000
(ECF No. 110-49, pp. 723-724);

"Parent/Guardian Notification of Conference Recommendations," dated October 2000 (ECF No. 110-49, pp. 725-726);

"Parent/Guardian Consent for Initial Special Education Placement," dated October 2000 (ECF No. 110-49, pp. 727-728);

"Parent/Guardian and Student Notification of Transfer of Rights Due to Age of Majority," dated October 2000 (ECF No. 110-49, pp. 729-730);

"Parent/Guardian Notification of Change of Special Education Placement," dated October 2000 (ECF No. 110-49, pp. 731-732);

"Explanation of Procedural Safeguards," dated October 2000 (ECF No. 110-49, pp. 743-750; ECF No. 110-50, pp. 751-757);

"General Instructions for Use with All Required Notice and Consent Forms," dated November 2000 (ECF No. 110-50, pp. 758-759);

"Definitions and Explanations," dated November 2000 (ECF No. 110-50, pp. 760-761);

"Examples of Potential Data Sources," dated November 2000 (ECF No. 110-50, pp. 762-767);

"Policy Statement Least Restrictive Environment Illinois State Board of Education," dated November 2000 (ECF No. 110-50, pp. 768-770);

"Explanation of Procedural Safeguards," dated October 2000 (ECF No. 110-50, pp. 798-819); and

"Examples of Potential Data Sources," dated November 2000 (ECF No. 110-50, pp. 820-827).

For at least some of the screen displays listed above, Mr.

Shroats indicated that they could have been modifications of forms included in the original program, but he was not sure. (Shroats' Dep. II at 71.) Additionally, he indicated that he was unsure as to whether certain pages of the deposit were even a part of the original. (*Id.* at 87.)

There is also a screen shot entitled "Kirby School District 140 Student Data File," which includes five buttons: "1998-1999 Files, 1999-2000 Files, 2000-2001 Files, 2001-2002 Files, and 2002-2003 Files." (ECF No. 110-42, p. 439). Mr. Shroats testified that the buttons were not a part of the original 1998 software. (Shroats' Dep. I at 275.) Further, the deposit contained a screen captioned, "State Mandated Forms" which lists seventeen forms, though there were only seven listed on a similar screen in the original software. (*Compare* ECF No. 110-18, p. 1-2 *with* ECF No. 110-49, p. 715; Shroats' Dep. 83). The number increased in subsequent versions because Mr. Shroats added forms to the page. (*Id.*)

It is clear that Mr. Shroats did not deposit the original IEP software. Nor did he submit a bona fide copy, as allowed by the Sixth Circuit in *Coles v. Wonder*, 283 F.3d 798 (7th Cir. 2002.) In *Coles*, the Sixth Circuit held that a copyright registration must include "the bona fide copies of an original work." *Id.* at 801. Quoting *Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209 (9th Cir. 1998), the court stated that "[w]hile it may

be possible for an artist to accurately reproduce his or her previous work from memory, for the purpose of certainty in obtaining copyright registration, such reproductions are simply insufficient." *Id.* at 802. Rather, the deposit must be "virtually identical to the original" and "must have been produced by directly referring to the original." *Id.* As an illustration, the court said that both a photocopy of the original would suffice, as well as a "meticulous freehand redrawing of an original, made while the artist referred directly to the original." *Id.*

There is ample testimony that Mr. Shroats did not refer to the original software when preparing the deposit. Nor did he even review the deposit in its entirety. Rather, he used a later version of the software and reconstructed at least part of the deposit from memory. The case law is clear that a reconstructed version cannot satisfy the deposit requirement. *See, e.g., Kodadek*, 152 F.3d at 1212; *Coles*, 283 F.3d at 802; *Nova Design Build, Inc., v. Grace Hotels, LLC*, No. 08 C 2855, 2010 U.S. Dist. LEXIS 17441 (N.D. Ill. Feb. 26, 2010).

Because the Court finds that the registration is invalid, it grants Defendants' motion for summary judgment.

### 3. *Sanctions*

The Copyright Act of 1976, 17 U.S.C. § 505, provides that in a copyright infringement action, "the court in its discretion may

allow the recovery of full costs by or against any party . . .
the court may also award a reasonable attorney's fee to the
prevailing party as part of the costs."  "[T]he Supreme Court has
adopted a generous formulation of the term prevailing party; . .
. parties are said to have prevailed in litigation for attorney's
fees purposes if they succeed on any significant issue in
litigation which achieves some of the benefit the parties sought
in bringing suit."  *King v. Illinois State Bd. Of Elections*, 410
F.3d 404, 411 (7th Cir. 2005.)  "At a minimum, to be considered a
prevailing party . . . [a party] must be able to point to a
resolution of the dispute which changes the legal relationship
between itself and the [opposing party]."  *Id.* at 414 (quoting
*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist*, 489 U.S.
782, 792-793, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989)).

Here, the Court is troubled by the misrepresentations that
Mr. Shroats made to the Copyright Office to register his
(invalid) copyright.  Misrepresentations which have been
discussed in this opinion *ad nauseum.*  Because Defendants
expended resources defending themselves against Plaintiff's
claims and obtained summary judgment in their favor, the Court
finds that an award of costs and attorney's fees related to Count
I is appropriate.  Defendants are directed to submit to the Court
a bill of costs and a petition for attorneys' fees.

## II.  Defendants' Motion to Dismiss or Stay Count II

In Count II of his Second Amended Complaint, Mr. Shroats maintains that Mr. Keller used CRT's property to conduct business on behalf of Customized.  By doing so, Mr. Shroats argues, Mr. Keller breached his fiduciary duty to him, as an equal shareholder of CRT.

### A.  *Summary of Relevant Facts*

When CRT was dissolved, Mr. Keller was appointed receiver of the dissolved corporation.  Because "there were outstanding unexpired client software maintenance contracts that were the obligation of Mr. Keller to fulfill as the Receiver for [CRT]," he used receivership funds to pay CRT's former employees to service the contracts and prevent them from going into default.  In addition, one former employee used CRT's former office space to respond to incoming calls from former clients and to provide software maintenance services.

Some of CRT's former employees were also paid by the receivership to perform services for Customized - a company organized by Mr. Keller on February 11, 2008 - and its clients.  This was because Mr. Keller believed "it would have been overly burdensome for the employees to constantly separate the hours they were working between [CRT] and [Customized] projects for payroll purposes."  As of September 2008, however, "all unexpired maintenance contracts of former [CRT] clients were serviced by

Customized, with salaries being paid by [Customized]."

Mr. Keller intended to reconcile, in the pending state court dissolution proceeding, the payments made for Customized-related work. To that end, he filed with the state court, an Interim Report of Receiver in which he acknowledged owing CRT $21,073.84. In October 2008, Mr. Keller's wife purchased the office which had previously housed CRT. The distribution of the remaining assets, including funds held in a bank account, is the subject of the state court proceeding, as is the issue of the reconciliation of receivership funds. On March 4, 2010, Defendants filed the pending motion.

B.   Standard of Review

Defendants' motion invokes the *Colorado River* abstention doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). The doctrine provides that, "a federal court may stay or dismiss a suit in exceptional circumstances when there is a concurrent state proceeding and the stay or dismissal would promote 'wise judicial administration.'" *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992)(quoting *Colorado River*, 424 U.S. at 818). Because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," the Supreme Court has cautioned that "abstention is appropriate only in 'exceptional circumstances.'"

*AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347
F.3d 272, 278 (7th Cir. 2003)(quoting *Colorado River*, 424 U.S. at
813, 817).  In determining whether abstention is appropriate, the
Court must not "find some substantial reason for the *exercise* of
federal jurisdiction by the district court; rather, the task is
to ascertain whether there exist exceptional circumstances, the
clearest of justifications, that can suffice under *Colorado River*
to justify the *surrender* of that jurisdiction." *Moses H. Cone
Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26, 103 S.
Ct. 927, 74 L. Ed. 2d 765 (1983)(internal quotation marks
omitted).

The Court's analysis has two steps.  Initially, it must
"inquire whether the concurrent state and federal proceedings are
parallel." *Caminiti*, 962 F.2d at 700.  If so, the Court must
then consider ten factors to determine whether the circumstances
are exceptional enough to warrant abstention.  *Id.* at 701.

C.   *Analysis*

Defendants maintain that the same issues presented in Count
II of Plaintiff's Second Amended Complaint are before the state
court in a matter captioned *Arthur Keller v. Harold Shroats and
Customized Technology, Inc.*, Case No. 07-CH-558.  Because the
state court proceedings are in an advanced state of resolution,
they ask the Court to either dismiss Count II or stay the federal
case in light of the ongoing state litigation.  The Court

20

analyzes each of the *Colorado River* steps.

1.  **Whether the State and Federal Court Proceedings Are**
    **Parallel**

State and federal proceedings are not required to be
identical in order to be parallel. Rather, proceedings are
parallel if "substantially the same parties are contemporaneously
litigating substantially the same issues in another forum."
*Tyrer v. City of S. Beloit*, 456 F.3d 744, 752 (7th Cir.
2006)(quoting *Interstate Material Corp. v. City of Chicgao*, 847
F.2d 1285 (7th Cir. 1988)). Indeed, "[t]he question is not
whether the suits are formally symmetrical, but whether there is
a 'substantial likelihood' that the [state court] litigation
'will dispose of all claims presented in the federal case.'" *AAR*
*Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir.
2001)(quoting *Day v. Union Mines Inc.*, 862 F.2d 652, 656 (7th
Cir. 1988). "[A]ny doubt regarding the parallel nature of the
[state court] suit should be resolved in favor of exercising
jurisdiction." *Id.* at 520(citing *Allen v. Bd. of Educ., Unified*
*Sch. Dist. 436*, 68 F.3d 401, 403 (10th Cir. 1995)).

Here, the state and federal proceedings do not involve the
same parties. In the state action, Mr. Keller, Mr. Shroats, and
CRT are parties. By contrast, CRT is not a party to the federal
litigation – only Mr. Keller and Mr. Shroats are. This fact,
however, is not dispositive. What is critical is whether the
issues being litigated in the two fora are substantially the

same.

The state court matter involves the dissolution of CRT, its placement in receivership, the sale of its assets, and the distribution of the sale's proceeds. In the federal court action, the Court is asked to determine whether Mr. Keller owed a fiduciary duty to Mr. Shroats and, if so, whether, by using CRT's funds to pay the employees of his own corporation, Mr. Keller breached that duty. Should the Court find that there was, indeed, a duty which was breached, damages (both actual and punitive) would ordinarily have to be determined.

Mr. Keller has admitted to using CRT's funds to pay Customized's employees, and has submitted for resolution a report to the state court detailing the amount which he used. These funds are at the core of Mr. Shroats' federal claim for breach of fiduciary duty. Resolution of the state court matter, then, would leave Mr. Shroats in a precarious position in the federal suit, as he would be unable to show that he suffered actual damages. And without actual damages, he cannot receive those that are punitive in nature. As a result, Mr. Shroats would no longer have a federal claim.

The Court, therefore, finds that the two proceedings are parallel.

**2. *Colorado River* Factors**

The following factors must be balanced when determining

whether to stay or dismiss federal litigation:

> 1) whether the state has assumed jurisdiction over the property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer*, 456 F.3d at 754. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-819 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-255, 57 S. Ct. 163, 81 L. Ed. 153 (1936)).

1.    Whether the state has assumed jurisdiction over the property.  The state court assumed jurisdiction over CRT's funds on December 31, 2007.  This factor weighs in favor of abstention.

2.    The inconvenience of the federal forum.  The federal forum is not inconvenient as all parties reside and/or conduct business near Chicago, Illinois.  This weighs against abstention.

3. The desirability of avoiding piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day*, 862 F.2d at 659.  Because the state and

23

federal actions involve the same issue – the amount of money owed by Mr. Keller to CRT – proceeding simultaneously in both forums would risk "duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue." *Caminiti*, 962 F.2d at 701. There is also the fact, discussed *supra*, that when the state court reaches its decision, Mr. Shroats will be unable to litigate here. And that it will, indeed, reach a conclusion prior to the federal court doing so is a very real possibility as the state court is very close to a resolution of the issue. Should this occur, all litigation in the federal court will have been for naught. For this reason, simultaneous proceedings would create an incentive for Mr. Shroats to attempt to delay the proceedings in state court so that this Court may rule on the matter. This factor strongly favors abstention.

4. The order in which jurisdiction was obtained by concurrent forums. This factor favors abstention as the state court action was filed more than ten months before Mr. Shroats filed this federal suit.

5. The source of the governing law, state or federal. The source of the governing law here is state law; this favors abstention.

6. The adequacy of state-court action to protect the federal plaintiff's rights. There is no reason for the Court to believe that the state court is not competent to provide Mr.

Shroats with an appropriate amount in damages. Therefore, this factor favors abstention.

7. The relative progress of state and federal proceedings. Defendants represent that the state court matter is nearing a conclusion. In the federal proceeding, discovery as to Count II has not yet begun. Because the state court has progressed further, this factor favors abstention.

8. The presence or absence of concurrent jurisdiction. The state court has concurrent jurisdiction over Mr. Shroats' federal court claim, which sounds in state law. Consequently, this favors abstention.

9. The availability of removal. The time for removal has expired. This factor weighs in favor of abstention.

10. The vexatious or contrived nature of the federal claims. There is nothing before the Court which would indicate that the proceedings are vexatious or contrived.[1] This factor, then, weighs against abstention.

The vast majority of the factors favor abstention, as does the fact that, should the state court resolve the issue of the amount of money owed CRT, Mr. Shroats will not have suffered any damages and will be unable to bring his claim in federal court. Consequently, the "exceptional circumstances" necessary to

--------------------

[1] In light of this finding, the Court declines to award Defendants attorney's fees or require Mr. Shroats to show cause.

abstain are present. For the reasons discussed *supra* the Court has no choice but to dismiss Count II of Mr. Shroats' Second Amended Complaint.

### 3. 735 ILL. COMP. STAT. 5/2-415

Defendants maintain that the Court lacks jurisdiction over the matters pleaded in Claim II. In making this argument, Defendants rely on 735 ILL. COMP. STAT. 5/2-415. Their reliance is, in part, misplaced.

The relevant part of the statute provides:

> Every receiver of any property appointed by any court of this State may be sued in respect of any act or transaction of the receiver in carrying on the business connected with the property, without the previous leave of the court in which the receiver was appointed; but the action shall be subject to the jurisdiction of the court in which the receiver was appointed, so far as the same is necessary to the ends of justice.

735 ILL. COMP. STAT. 5/2-415(c).

The Court will dispose of this argument in short order. Indeed, the provision requires that lawsuits against the receiver be brought in the court in which the receiver was appointed where: 1) the suit relates to any act or transaction of the receiver in carrying on the business *connected with the property* and 2) it is necessary to the ends of justice. The Court does not find that the first element is satisfied. To be sure, there is nothing that would indicate that when Mr. Keller used CRT's funds to pay Customized's employees (for work on behalf of Customized), he was carrying on the business connected with *CRT's*

*property,* as he was not carrying on CRT's business. Rather, he was using CRT's property (its funds) to carry on the business of a completely different company. Consequently, the statute is not applicable to the facts of this case and does not divest the Court of jurisdiction.[2]

### Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is granted as is their motion to dismiss or stay. Defendants are to submit to the court a bill of costs and petition to for attorney's fees related to Count I within thirty days of the entry of this order.

Date: June 22, 2011          E N T E R E D:

_Arlander Keys_

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT

---

[2] In light of this finding, the Court need not reach the second requisite – that allowing the claim to proceed in state court is necessary to the ends of justice.